IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SALVATORE MANNINO and JACQUELINE MANNINO           Plaintiffs<br><br>vs.<br><br>WESTFIELD INSURANCE COMPANY           Defendant | :<br>:<br>:<br>:  CIVIL ACTION NO. 15-6487<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**Henry S. Perkin, M.J.**                                                                                                   **November 7, 2016**

### MEMORANDUM

      This matter is before the Court on Defendant, Westfield Insurance Company's Motion for Summary Judgment Directed to Plaintiffs, Salvatore Mannino and Jacqueline Mannino. In conjunction with its motion, Defendant filed a brief and exhibits in support thereof. Plaintiffs did not file a response to the motion or statement of facts, and instead indicated to the Court that they did not intend to file a response to the motion for summary judgment. Having reviewed the motion and pertinent filings pertaining to this matter, the Court is prepared to rule.

### Procedural History

      Plaintiffs Salvatore and Jacqueline Mannino ("Plaintiffs") commenced this action against Defendant Westfield Insurance Company ("Westfield") on October 28, 2015 by filing a Complaint in the Court of Common Pleas of Philadelphia alleging breach of contract and insurance bad faith. The present litigation involves property damage sustained by Plaintiffs as a result of an alleged water leak on the premises of an office building at 819 Easton Road, Warrington, PA 18976. Because there was diversity of citizenship, and the amount in

controversy exceeded $75,000, the action was removed by Westfield to this District on December 3, 2015 pursuant to 28 U.S.C. §§ 1332 and 1441.  Westfield filed its Answer to Plaintiffs' Complaint on February 9, 2016.

On March 22, 2016, a pretrial conference was held before the Honorable Joseph F. Leeson, Jr.  Shortly thereafter, and with the consent of all parties, the action was transferred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of a final judgment.  A subsequent Rule 16 conference was held before the undersigned on May 12, 2016, and a Rule 16 Scheduling Order was issued by the undersigned on that same date.  More specifically, the Court directed that discovery be completed by August 31, 2016.

Defendant, Westfield Insurance Company's Motion for Summary Judgment Directed to Plaintiffs, Salvatore Mannino and Jacqueline Mannino, and Brief in support thereof, were filed on August 30, 2016.  See Docket Nos. 22 and 22-1.  Westfield's motion sets forth, in numbered paragraphs, a short and concise statement of the material facts as to which it contends that there is no genuine issue to be tried.

Plaintiffs were required to file their response to the motion for summary judgment within twenty-one days after service of same, making their response due on or before September 20, 2016.  See Fed.R.Civ.P. 56(c).  Plaintiffs failed to do so.  This Court issued an Order dated October 7, 2016 directing Plaintiffs to either file a response to the outstanding motion for summary judgment, or indicate to the undersigned that they did not intend to respond, within ten days of the date of the Order.  See Docket No. 25.  By email correspondence to the undersigned's Chambers dated October 17, 2016, counsel for Plaintiffs formally notified the Court that Plaintiffs did not intend to file a response to the outstanding motion for summary judgment.  See

Docket No. 26.

## Facts

Based upon the record papers, exhibits, and Westfield's statement of facts set forth in its motion,[1] the pertinent facts are as follows:

The present litigation involves property damage sustained as a result of an alleged water leak on the premises of a two-story office building owned by Plaintiffs at 819 Easton Road in Warrington, Pennsylvania ("Insured Premises"). More specifically, Plaintiffs assert that on or about February 17, 2015, they suffered a sudden and accidental direct loss and damage to their Insured Premises as a result of water damage. Plaintiffs further allege that at the time of the incident, while insured through a Westfield Insurance Policy ("Policy") that was in full effect, they sustained a covered peril to the Insured Premises. Plaintiffs aver that notice of the loss was given to Westfield in a prompt and timely manner, and that they complied with the terms and conditions required by the Policy. Plaintiffs allege, however, that Westfield failed to fully pay the claim. Westfield avers that, having been presented with information by Plaintiffs' public adjuster, it paid those portions of the loss it believed were covered by the Policy.

Plaintiffs, Salvatore Mannino and Jacqueline Mannino, were deposed in this matter on May 16, 2016. Plaintiff Salvatore Mannino testified that the water leak occurred in

---

[1] In this case, Westfield set forth its concise statement of facts in its motion for summary judgment filed August 30, 2016. See Docket No. 22 at pages 1-7. Plaintiffs did not file any response in opposition to the statement of facts set forth by Westfield. Accordingly, the factual assertions set forth by Westfield in its motion for summary judgment will be deemed admitted. See Fed.R.Civ.P. 56(e) (if a party fails to address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion); See also Binder v. PPL Servs. Corp., No. Civ.A. 06-2977, 2009 U.S. Dist. LEXIS 103814 (E.D. Pa. Nov. 5, 2009) (Perkin, M.J.); Higgins v. Hosp. Cent. Servs., No. Civ.A. 04-74, 2004 U.S. Dist. LEXIS 24907 (E.D. Pa. Dec. 9, 2004) (Gardner, J.); Kelvin Cryosystems, Inc. v. Lightnin, No. Civ.A. 03-881, 2004 U.S. Dist. LEXIS 23298 (E.D. Pa. November 15, 2004) (Gardner, J.).

two places of the Insured Premises. More specifically, he identified the water meter and another pipe located at opposite corners of the room, as the sources of the leak. Mr. Mannino indicated that the water meter cracked and a piece of pipe cracked, contributing to the leak.

Mr. Mannino testified that although he had previously rented the Insured Premises, the last tenant to occupy the Insured Premises was two years prior to the date of the alleged incident. When asked why the Insured Premises did not have a tenant for that period of time, Mr. Mannino stated, "[w]e had cabinet guy in there, just doing cabinets, whatever, selling cabinets, and then just left and, you know, I just had never – we never got anybody in." Mr. Mannino admitted to marketing the Insured Premises to potential tenants, but testified that he believes he "marketed [the premises] a little too high, that was the problem." Mr. Mannino further testified as follows:

> Q. And two years seems to be a long period of time to have it empty?
>
> A. Yes, sir.
>
> Q. Did you make it any other effort to get anybody in there or do anything –
>
> A. Yeah, we dropped the price.
>
> Q. Okay. At the time of the loss, what were you asking for the rent?
>
> A. At the time of the loss, we were asking 2900.
>
> Q. Still no takers at that time?
>
> A. We had – we had a Farmers [Insurance] moved in there after the loss.

Mr. Mannino was questioned whether, given the two years of vacancy, any weatherization had been performed at the Insured Premises. In response, Mr. Mannino testified as follows:

> I mean, what I do is I usually I – I try to go there two, you know, three times a week because we have the well from the house feeds the restaurant. So I always go, I have to put bleach in the filter. So, I go, average, every week I'm in there, you know what I mean? I have to go put bleach in the water, you know, so I would say three times a week, sir?

Mr. Mannino later testified that the bleach was required by the health department for the filter, and it had nothing to do with weatherization. When questioned as to whether he did anything else other than put bleach in the filter, Mr. Mannino testified as follows:

> A.  Same thing I usually do. Make sure the heater is always on, 60. I check the rooms, make sure there's nobody there. Because we had a couple people like sleeping there in the closets, believe it or not. We always have a routine, I check the rooms, you know, put the bleach, you know, make sure the heater is on, always on 60.
>
> Q.  So three times a week you go put the bleach in, check the heater, and check the entire inside of the property?
>
> A.  Roughly two, three times a week, I'm almost, yes, sir, I check it.

In its written discovery served on Plaintiffs, Westfield requested that Plaintiffs identify the name and contact information for any business that occupied the Insured Premises where the alleged losses occurred for one year prior to the losses, at the time of the losses, and for one year subsequent to the losses. In response to the discovery, Plaintiffs stated that "[t]he property was vacant prior to the loss and during the loss. Farmers Insurance Company occupied the subject property after the loss. . ."

Westfield avers that in May 2016, for the first time since this litigation commenced, it was advised in both Plaintiffs' answers to written discovery and Mr. Mannino's testimony, that the Insured Premises was vacant at the time of the alleged loss. Westfield asserts that it is undisputed that Plaintiffs were insured through a Westfield Policy (Policy No. CWP 5341121) for the period of July 15, 2014 through July 15, 2015. However, based upon the exclusions of this Policy, Westfield believes that Plaintiffs have failed to produce sufficient evidence to support their claims and are unable to meet their burden of proof.

### Standard of Review

Summary judgment is appropriate where the record and evidence, taken in the light most favorable to the non-moving party, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Anderson, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law. Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must cite "to particular parts of materials in the record" showing that there is

a genuine dispute for trial.  Fed. R. Civ. P. 56(c).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim.  Celotex, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine dispute as to any material fact, then summary judgment is proper.  Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

## Discussion

In its brief, Westfield correctly cites the case law relative to this Court's determination of insurance policy coverage in this matter.  More specifically, in making an insurance policy coverage determination, this Court must initially decide the scope of the insurance coverage and then review the allegations raised in the pleading to see if they would fall within the scope of the policy if proven.  Gray v. Allstate Indem. Co., 2015 U.S. Dist. LEXIS 21109 at * 11 (M.D. Pa. 2015) (citing Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208 (Pa. Super. 1994)).  The interpretation of an insurance contract is a question of law for the court to decide.  See Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d. Cir. 1997); Hunyady v. Aetna Life & Casualty, 678 A.2d 1312, 1313 (Pa.Super. 1990).

The United States Court of Appeals for the Third Circuit has stated,

> [I]n Pennsylvania a court construes ambiguities in an insurance policy strictly against the insurer. Nevertheless, in Pennsylvania, and no doubt elsewhere, '[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it.' In construing policy language, courts shoulder consider any special usage '[w]here terms are used in a contract which are known and understood by a particular class of persons in a certain special or peculiar sense[.]'

Gray, 2015 U.S. Dist. LEXIS 21109, at * 11 (quoting USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 198 (3d Cir. 2006)) (internal citations omitted).  If the terms of the policy are clear and unambiguous, the general rule in Pennsylvania is to give effect to the plain language of the agreement.  Bensalem Township v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994).

The burden for determining whether coverage exists is on the insured, while the insurer bears the burden of establishing an applicable exclusion in the contract.  Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (citing Erie Ins. Exchange v. Transamerica Ins. Co., 533 A.2d 1363, 1366-67 (Pa. 1987); American States Ins. Co. v. Maryland Cas. Co., 628 A.2d 880, 887) (Pa. Super. 1993)).  For exclusions in a policy, a court is to give effect to the exclusion if it is clearly worded and conspicuously displayed in the policy.  Giangreco v. United States Life. Ins. Co., 168 F. Supp.2d 417, 421 (E.D. Pa. 2001) (citing Pacific Indemnity Co. v. Linn, 766 F.2d 754, 761 (3d Cir. 1985)).  Ultimately, when interpreting the terms of an insurance contract, the goal is to "[e]ffectuate the intent of the parties as manifested by the language of the written instrument."  Cosenza, 258 A.3d at 206 (citing Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)); Gray, 2015 U.S. Dist. LEXIS 21109, at * 12-13.

It is undisputed that Plaintiffs, at the time of the loss, were insured through a Policy issued by Westfield which contained the following provision:

> **Vacancy Provisions**
>
> If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:
>
>> **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>>
>>> .  .  .
>>
>> **(d)** Water damage;
>>
>>> .  .  .

In addition, we note that the Policy defines vacancy as follows:

> **Vacancy**
>
>> **a. Description of Terms**
>>
>>> **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:
>>>
>>>> .  .  .
>>>
>>> **(b.)** When this policy issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:
>>>
>>>> **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or
>>>>
>>>> **(ii)** Used by the building owner to conduct customary operations.

9

Initially, we note that in this matter, it is undisputed that Plaintiffs are alleging property damage as a result of water damage. Specifically, Mr. Mannino testified that he first found out about the property damage when he "was walking by [the property] and [he] noticed the water in the basement was full. . . .[with] at least two feet" of water.

Moreover, it is clear, based on Plaintiffs responses to written discovery, that the Plaintiffs themselves have acknowledged that the property was vacant at the time of the loss. More specifically, in response to the discovery, Plaintiffs stated that "[t]he property was vacant prior to the loss and during the loss. Farmers Insurance Company occupied the subject property after the loss. . . ." In addition, Mr. Mannino testified that although he had previously rented the Insured Premises, the last tenant to occupy the Insured Premises was two years prior to the date of the alleged incident. When asked why the Insured Premises did not have a tenant for that period of time, Mr. Mannino stated, "[w]e had cabinet guy in there, just doing cabinets, whatever, selling cabinets, and then just left and, you know, I just had never – we never got anybody in." Mr. Mannino admitted to marketing the Insured Premises to potential tenants, but testified that he believes he "marketed [the premises] a little too high, that was the problem." Mr. Mannino further testified as follows:

> Q. And two years seems to be a long period of time to have it empty?
>
> A. Yes, sir.
>
> Q. Did you make it any other effort to get anybody in there or do anything –
>
> A. Yeah, we dropped the price.
>
> Q. Okay. At the time of the loss, what were you asking for the

| | | |
|---|---|---|
| | | rent? |
| | A. | At the time of the loss, we were asking 2900. |
| | Q. | Still no takers at that time? |
| | A. | We had – we had a Farmers [Insurance] moved in there after the loss. |

This Court agrees with Westfield that, in light of the testimony of Mr. Mannino, and responses of Plaintiffs to written discovery, the vacancy provision of the Policy applies to exclude coverage for the water damage allegedly sustained in this matter. Plaintiffs have failed to submit any evidence to the contrary, and summary judgment, therefore, will be granted in favor of Westfield. See Fed.R.Civ.P. 56(e) (if a party fails to address another party's assertion of fact as required by Rule 56(c), the court may grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it).

The specific and express definition of "vacancy" contained within the Policy as it applies to this matter, provides that a building is considered vacant unless at least 31% of its total square footage is: (i) rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or (ii) used by the building owner to conduct customary operations. We note that based on Mr. Mannino's testimony, even considering his sporadic checks of the Insured Premises that occured no more that three times per week, it is clear that the Plaintiffs were not conducting customary operations on more than 31% of the square footage of the property for the purposes of the vacancy definition.

11

More specifically, Mr. Mannino testified as follows:

> I mean, what I do is I usually I – I try to go there two, you know, three times a week because we have the well from the house feeds the restaurant. So I always go, I have to put bleach in the filter. So, I go, average, every week I'm in there, you know what I mean? I have to go put bleach in the water, you know, so I would say three times a week, sir?

Mr. Mannino later testified that the bleach was required by the health department for the filter, and it had nothing to do with weatherization. When questioned as to whether he did anything else other than put bleach in the filter, Mr. Mannino testified as follows:

> A.   Same thing I usually do. Make sure the heater is always on, 60. I check the rooms, make sure there's nobody there. Because we had a couple people like sleeping there in the closets, believe it or not. We always have a routine, I check the rooms, you know, put the bleach, you know, make sure the heater is on, always on 60.
>
> Q.   So three times a week you go put the bleach in, check the heater, and check the entire inside of the property?
>
> A.   Roughly two, three times a week, I'm almost, yes, sir, I check it.

In summary, Mr. Mannino's testimony reveals that for approximately two years prior to the loss in this matter, his time at the Insured Premises consisted of occasionally placing bleach in the water filter located in the basement, making sure there were no individuals trespassing on the property, and verifying that the heat was set at 60 degrees Fahrenheit, all while he was attempting to find someone to rent the location.

The Insured Premises consists of a two story office building with a basement. This Court finds that given the size of the property, periodic maintenance to the water filter in the basement, and visual inspections of the premises a few times per week cannot be interpreted as

customary operations in more than 31% of the square footage of the property for the purposes of the vacancy exclusion in the Policy. As noted in their responses to written discovery, the Plaintiffs acknowledge that "[t]he property was vacant prior to the loss and during the loss. . ." The simple maintenance and quick "checks" of the Insured Premises are insufficient for the purposes of the vacancy definition, and therefore, this Court finds that the exclusion for water damage sustained on the premises when there are sixty (60) consecutive days of vacancy before the loss or damage occurs is applicable to the present matter.

The Policy in this matter clearly and unequivocally defines "vacancy" for the purposes of the vacancy exclusion. For exclusions in a policy, a court is to give effect to the exclusion if it is clearly worded and conspicuously displayed in the policy. Giangreco v. United States Life. Ins. Co., 168 F. Supp.2d 417, 421 (E.D. Pa. 2001). There is no dispute of material fact that the circumstances of this matter fall within the vacancy provisions of the Policy. The Policy language in this matter is unambiguous to exclude coverage for the alleged water damage claim, and Mr. Mannino's own testimony acknowledges the vacancy of the premises prior to the alleged loss. Plaintiffs have provided no evidence to avoid the exclusion of coverage contained in the Policy. Because Plaintiffs have failed to identify any genuine issues of material fact, Westfield is entitled to summary judgment in its favor.

## Conclusion

Westfield's motion for summary judgment will be granted. An Order follows.